## DAY BROS. LUMBER CO. v. MITCHELL.
### No. 7807.

Circuit Court of Appeals, Fifth Circuit.
May 19, 1936.

Arthur A. Moreno, of New Orleans, La., for appellant.

Jere Austill, of Mobile, Ala., and Alex W. Swords and Arthur B. Leopold, both of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, Joseph Mitchell, brought this suit against Day Brothers Lumber Company, to recover $7,500 on a contract of employment as an accountant and recovered judgment in that amount. The only assignment of error pressed on this appeal runs to the refusal of the District Court to direct a verdict for defendant at the close of the evidence.

The undisputed facts appearing from the record are these: The contract was made originally with B. G. Boaz and was assigned by him to Mitchell with the consent of Day Brothers Lumber Company as evidenced by the following letter:

"September 1, 1929.
"Mr. Joseph Mitchell,
"2313 Audubon St.,
"New Orleans, La.
"Dear Sir:
"We are in receipt of letters from Mr. B. G. Boaz, of Moss Point, Mississippi, who has been handling our income tax matters in which he states that he has arranged to assign the agreement we made with him to you, which is satisfactory to us.

"Under the terms of this agreement he is to receive a salary of $2,400.00 per annum, for handling our income tax matters upon an annual basis, and $7,500.00 for handling the distribution of Capital Assets in case the plan outlined by Mr. Boaz is accepted.

"Yours very truly,
"[Signed] Day Brothers Lumber Co.
"RND-r."

Mitchell entered upon his employment about September 1, 1929, and performed services under the contract for about three and a half years, for which he was regularly paid compensation at the rate of $200 per month. The plan devised by Mitchell was this: Day Brothers Lumber Company had sold a tract of timber to the Pelican Bay Lumber Company for $561,250 on an installment basis, payments running over a period of ten years, upon which there was at that time a taxable profit in excess of $300,000. Mitchell prepared the tax return for the fiscal year ending June 30, 1930, and distributed the profit out of the surplus accumulated prior to 1913, which was nontaxable. The return on this basis was filed about September 15, 1931, was not rejected by the Commissioner of Internal Revenue, and became final when the existing statute of limitation ran two years later. The tax return for the year ending June 30, 1931, was also prepared on the same plan and filed. Thereafter, the 1931 return was investigated by Ward B. Miller, internal revenue agent in charge at New Orleans, and on February 16, 1933, he wrote to Day Brothers stating that the return was accepted as correct, saying that his action was subject to approval in Washington and should subsequent information be received that would materially change the amount reported, the Bureau was obliged under existing laws to redetermine the tax liability.

It is contended by appellant that the plan had not been accepted by the Commissioner of Internal Revenue nor the Treasurer of the United States as neither could be bound by the approval of the revenue agent and tax returns made up according to the plan could be rejected and additional taxes assessed on any future returns. It is not shown that the Commissioner has taken such action nor is it contended that the plan was either illegal or fraudulent.

It must be conceded that the Commissioner was not bound by the approval of his agent and was at liberty to reject the plan and redetermine the taxes due on any future returns. However, that is a matter of law, as to which both parties to the contract were charged with knowledge. Mitchell had performed his contract when he had devised a plan which was accepted by the Commissioner of Internal Revenue. Undoubtedly it was accepted as to the first returns made. The contract does not pretend to guarantee that acceptance would not be subsequently revoked as to future returns. In fact, the Commissioner himself could not guarantee that, as Congress would always be at liberty to change the law, or other administrative officers succeeding him might assume a different attitude. Clearly, future contingencies of this kind were not within the contemplation of the parties when the contract was made and it would be an unreasonable interpretation to so hold.

It follows that appellant was not entitled to a directed verdict. The record presents no reversible error.

Affirmed.

WALKER, Circuit Judge, concurred in the disposition of this case, but died before the opinion was handed down.